53 CCPA

**Application of Edgar N. MEAKIN.**

**Patent Appeal No. 7552.**

United States Court of Customs and Patent Appeals.

Feb. 24, 1966.

Bruce & Brosler, Charles O. Bruce, Edward Brosler, Berkeley, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 11, 17, 20, 21 and 22 of Meakin application serial No. 78,507, filed December 22, 1960, as unpatentable over the prior art. All the other claims in the application stand allowed.

Appellant's application relates to pellet mills of "the type utilizing a floating die such as depicted in the patent to Bonnafoux, No. 2,870,481 of January 27, 1959." That patent refers to mills into which comminuted feeds and the like are fed for extrusion into the shape of hard, glossy pellets of cylindrical cross section. Such a pellet mill includes a rotatable ring-shaped die having a plurality of radial holes therethrough. The inner surface of the die is engaged by rolls that extrude feed or grain through the holes in an outward direction. In the "floating die" type mill disclosed in Bonnafoux, the ring die is not mounted on the mill housing but is supported entirely by three rotatable extrusion rolls spaced within the ring die, and the rolls, being in engagement with the inner surface, cause the die to rotate.

It is appellant's stated object to provide a pellet mill of the aforementioned type in which 1.) the position of a single one of the three rolls is adjustable through a range sufficient to permit installation and removal of the die, and 2.) a sealing arrangement around the adjustable roll minimizes contamination be-

tween the feed to be pelleted and mill lubricant. The construction is illustrated in Figures 1 and 4 of the application, reproduced below:

The device comprises a base 1 on which is mounted a housing 3 having front and rear walls 5 and 7 interconnected by end walls 9 and 11. The front and rear walls support two pairs of aligned bearing housings 13, 15 with bearings 17 therein, one pair of housings and bearings being displaced substantially 120° from the other pair about a central axis 25. One such pair of aligned bearings supports a fixed location extrusion roll supporting shaft 35 which extends through the front wall 5 to mount an extrusion roll 37, while the other pair carries a similar fixed location extrusion roll shaft 29 which also extends beyond the front wall to mount a second roll 31.

A third extrusion roll 41 is adjustably mounted with respect to the aforementioned fixed location rolls. That roll is mounted on a stub shaft 65 carried by a saddle-shaped lever 43 which is journalled at one end on a pivot shaft 45 supported between the front and rear walls at a location such that an intermediate point in the adjustment the axis of roll 41 is substantially 120 degrees from the axis of the two fixed location rolls. An adjusting screw 59 connected to the free end of the lever and extending through the housing to an adjusting wheel 51 threadedly secured thereon permits adjustment of the position of the roll 41 relative to the fixed location rolls 37 and 31.

A sprocket is fixed to the shaft of each of the three rolls for engagement with a continuous chain 83 whereby all three are positively driven as a result of the shaft 35 being directly driven from a motor 89 through gear 85 and pinion 87. An idler gear or sprocket 99 in engagement with the chain 83 and mounted on an arm 91 pivoted on the housing at 93 is biased by a spring 105 to maintain proper tension in the chain despite adjustment of the position of the roll 41 and its shaft 65.

A floating ring type die 115, having radial openings therein, is mounted on the outside of the three rolls with the rolls bearing against it. The application discloses that the inner or "compression side of * * * [the die] is preferably recessed along the area of the die holes to receive the rolls and provide a retaining shoulder 117 to each side of the rolls." To install the die, the adjustable roll 41 is moved inwardly to a position permitting assembly of the die over the rolls, and that roll is then moved outwardly until pressure engagement is established between all three rolls and the die. Then rotation of the rolls will produce rotation of the die through the frictional engagement between the rolls and the die so that pellet material introduced in the die chamber through chute 181 will be extruded through the die openings. Pellet knives 199 adjacent the outer periphery of the die cut off the extruded material so that it falls within a pellet housing for recovery through a discharge spout 201.

A sealing arrangement is provided where the roller shafts 29, 35 and 65 pass through the front wall 5 into the die chamber in which the rolls are located. That arrangement includes a main front plate 125 affixed to the wall 5 and sealed thereto about its peripheral edge by a sealing ring 127. The main front plate has openings about the fixed location roll shafts 29 and 35 bounded by circular ribs 129 of slightly greater diameter than the shafts to receive seals 131. A more complicated arrangement utilizing a circular die seal plate 139 and other elements not clearly shown in the figures of the drawing reproduced herein is used to seal the shaft 65 for the adjustable roll.

Claims 11 and 17 are representative and read:

11. A pellet mill comprising a housing including parallel front and rear walls and end walls connecting said front and rear walls; two pairs of aligned bearing housings and included bearings in said front and rear walls, the one pair being displaced substantially 120 degrees from the other pair about a central

axis; a fixed location extrusion roll supporting shaft journalled in each pair of aligned bearings and extending through said front wall; an extrusion roll mounted on each of said shafts; means for adjustably supporting a third extrusion roll, said means including a shaft extending through said front wall at a location such that the axis of said shaft can describe a path substantially along the mid-line between said aforementioned rolls; means for driving said rolls, said means including a sprocket on each of said roll shafts, a sprocket chain encircling said sprockets in engagement therewith; and means for tensioning said sprocket chain.

17. A pellet mill comprising a base; a housing on said base including front and rear walls and end walls connecting said front and rear walls; two pairs of aligned bearing housings and included bearings in said front and rear walls; a fixed location extrusion roll supporting shaft journalled in each pair of aligned bearings and extending through said front wall; an extrusion roll· mounted on each of said shafts; means for adjustably supporting a third extrusion roll for adjustment toward and away from said fixed location rolls, said means including a roll supporting shaft; an extrusion roll journalled on said adjustable supporting means shaft; means for sealing said fixed location roll shafts in said front wall; and means for sealing said adjustable supporting means shaft in said front wall; a cylindrical die adapted to fit over and be supported by said extrusions rolls; said die having its compression side recessed to receive all of said compression rolls when said adjustable roll is adjusted outwardly and thereby retain said die about said rolls and form a die chamber; said roll adjustment means having a range of inward adjustment sufficient, in and of itself, to release said die for removal from said rolls; and means for feeding extrudable material to said die chamber.

Claims 20, 21 and 22 do not call for the sprocket type drive for the rolls set out in claim 11 or the sealing means recited in claim 17. They further differ from claim 11 by reciting, as does claim 17, that the inner side of the die is recessed.

The sole issue is whether the appealed claims are obvious over Bonnafoux in view of other prior art including:

| | | |
|---|---|---|
| Churchward | 1,153,372 | Sept. 14, 1915 |
| Ballot | 1,662,229 | Mar. 13, 1928 |
| Meakin | 2,391,638 | Dec. 25, 1945 |
| Italian patent | 504,930 | Dec. 14, 1954 |

The Bonnafoux machine is illustrated in Figures 3, 4 and 5, reproduced below:

In Bonnafoux, a rotary die 110 having radial slots is mounted on and rotated by three cooperative rolls 106 engaging its inner periphery. The rolls are disposed at positions 120 degrees apart between plates or walls 67 and 80 in a pellet mill housing 60 to which is supplied feed grain or like material to be formed into pellets. Each roll is mounted on the end of a drive shaft 98 rotatably supported between bearings in a mounting block 62 and adjustment plate 140 which are spaced horizontally. The shafts are each rotated from a motor-driven gear reducer 32 by means including a transmission shaft 164 having universal joints 58 and 162 at its ends.

Located around each shaft 98 and extending into bores 142 and 64 in the adjustment plate 140 and the mounting block 62, respectively, is an adjustment sleeve 144 whose opposite ends are provided with sockets 146 formed on centers eccentric with the sleeve to permit radial adjustment of the drive shafts 98 and the rolls 106 thereon. A roller thrust bearing 148 journals the right hand end of each shaft 98 in the adjustment sleeves 144 and a ball bearing 150 is located in the left-hand socket 146 of the sleeve to journal the left-hand extremity of the shaft. An adjustment flange 154 is formed integrally with each sleeve and secured in position with the adjustment plate 140 by a plurality of bolts 156 in elongated slots in the flange. Thus the positioning of each of the rolls 106 toward or away from the inside of the die 110 can be accomplished by rotating the adjustment flange 154 to rotate the sockets 146 with respect to the bearings 148 and 150 and thus adjust the centers of the sockets with respect to the center of the drive shaft 98.

Ballot, Churchward and the Italian patent relate to continuous belt type means for driving generators, pumps, starters and the like from an engine or motor. Each arrangement provides means for maintaining the belt element under tension and in Ballot that element is a sprocket chain.

The Meakin patent discloses a pellet mill utilizing a circular die and cooperating roll and including a gasket arrangement for sealing the wall of the mill about the opening through which the drive shaft for the roll extends.

The examiner rejected claim 11 as unpatentable over Bonnafoux in view of Ballot, Churchward or the Italian patent and claims 17, 20, 21 and 22 on Bonnafoux under 35 U.S.C. § 103, with a further rejection of claim 17 on Bonnafoux in view of Meakin. The board found no error in those rejections.

More specifically, the basis for the rejection of claim 11 is that Bonnafoux discloses all of the structure recited in the claim with the exception of the chain drive and that it would be obvious to substitute such a drive in view of any of the secondary references cited against it.

Claims 17, 20, 21 and 22 were regarded as not distinguishing unobviously over Bonnafoux in such recitations as that referring to the adjustable roll as having a range of inward adjustment sufficient to release the die for removal and, in the case of claim 17, that calling for sealing means about the shafts. As to the latter recitation, Meakin was also relied on as teaching the use of sealing means in a pellet mill.

Before us, appellant points out that his chain drive for the rolls differs from the individual gear drive for each roll in Bonnafoux. He further states that his structure permits quick and easy adjustment of the die on the supporting rolls during operation by a single hand-operable control. Appellant argues that movement of only one roll shaft in his machine effects the complete adjustment of the die while all three shafts must be moved in the Bonnafoux device to attain proper adjustment of the die. It is also urged that it would be dangerous to adjust the rolls of the latter device when it is operating and that "in fact it is actually necessary that the machine be stopped and disassembled in order to adjust or remove the die."

While it is apparent there are many specific differences between appellant's machine as disclosed and that of Bonnafoux, we do not find any of the aforementioned points raised by appellant persuasive that the subject matter of the appealed claims is unobvious. In the first place, Ballot, Churchward and the Italian patent teach that it is a common expedient to drive a plurality of shafts from a single driven shaft through an interconnecting belt or chain. It seems clear that the incorporation of such drive means in place of the separate drive for each shaft in the Bonnafoux machine would be obvious, and we find no significant argument to the contrary by appellant.

While Bonnafoux discloses that all three of his rolls are adjustable in position, he states:

\* \* \* Therefore, when it is desired to adjust the drive and supporting rollers, or one of the drive and supporting rollers 106 toward or away from the tread 114 of the die 110, the bolts 156 are loosened and the adjustment flange 154 is rotated in the appropriate direction to accomplish such adjustment by rotating the sockets 146 with respect to the bearings 148 and 150 and thus adjusting the centers of the sockets 146 with respect to the center of the drive shaft 98.

Not only does that suggest, as would be obvious anyhow, that an adjustment may be made through one roll or roller alone, but it further seems clear that making the range of adjustment of a single roll sufficient to permit installation or removal of the die without disturbing the other rolls would be obvious to a person of ordinary skill in the art.

Concerning the matter of adjustment, Bonnafoux further states:

\* \* \* Furthermore, due to the provision of the adjustment sleeves 144, it is possible to adjust the drive and supporting rollers 106 with respect to the tread 114 of the die 110 during the operation of the pellet mill 10 and thus to obtain optimum driving and driven relationships between the drive and supporting rollers 106 and the die 110 and, furthermore, the production of optimum pellets from the combined die and rollers.

It thus is clear that appellant errs insofar as he contends that the Bonnafoux machine must be stopped to adjust the die or dies. Whether appellant's device as disclosed is easier or safer to *adjust* than the reference device is not material since the appealed claims do not define the adjustment structure with sufficient particularity to distinguish over the reference in that respect. As to the contention that the Bonnafoux machine must be stopped and disassembled to *remove* the die, appellant does not distinguish from his own machine which obviously must also be stopped and disassembled for such purpose.

Appellant also states that the Bonnafoux patent does not disclose a positive sealing means for the drive shafts while he, by utilizing only one movable shaft and two fixed ones, is able to provide a sliding positive seal which prevents cross contamination of the feed grain mixture and the machine lubricant. Since the Meakin patent discloses sealing the driving shaft in a pellet mill, nothing unobvious to a person of ordinary skill in the art is seen in the very broad recitation of sealing means in claim 17, the only appealed claim mentioning a seal.

Appellant further states that all appealed claims include a limitation directed to the extrusion die having its compression side recessed to receive all of the compression rolls and argues that Bonnafoux does not teach that feature. He also argues that neither the examiner's answer nor the decision of the board gave consideration to that limitation.

There appears to be good reason for such omission by the examiner and the board. In the first place, the record does not show that appellant ever raised that issue before. But what is more important is that Bonnafoux clearly does disclose that the compression side of the die is recessed.

Appellant's argument is based on what is plainly a draftsman's error in Fig. 3 of Bonnafoux, reproduced hereinabove. While the right-hand side of the die 110 is shown therein as having a flange 112 which extends inwardly from its center portion, the element to which the reference numeral 112 is applied on the left-hand side of the die is shown as an integral part of the mounting plate 67. That the left-hand flange 112 should have been shown as a flange on the die similar to the flange 112 on the right-hand side is apparent from the following statement in the Bonnafoux specification:

\* \* \* It will be noted that the opposite flanges 112 on the die 110 engage the opposite edges of the rollers 106, thus maintaining the die 110 in alignment with said rollers. Furthermore, the outer flange 112 encompasses the circular face plate 80 while the inner flange 112 rotates about the circular mounting plate 67.

In addition, the sectioned portion of the die 110 at the left-hand side of Fig. 4 of the patent appears to show the described construction.

For the foregoing reasons, we think the appealed claims were correctly rejected as obvious under the provisions of 35 U.S.C. § 103.

The decision of the board is affirmed.

Affirmed.